UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL WESOLOWSKI and
LAURA WESLOWSKI,

                          Plaintiffs,

   -against-                                    1:05-CV-0321
                                                                  (LEK/RFT)

J. RICHARD BOCKELMAN, Sheriff, County of
Ulster, BRADFORD EBEL, Superintendent,
RAY ACEVEDO, Warden, and
COUNTY OF ULSTER,

                          Defendants.
_____

# MEMORANDUM-DECISION AND ORDER[1]

## I. Background

This case concerns alleged acts of retaliation against Plaintiff Paul Wesolowski (hereinafter "Plaintiff") and his wife, Plaintiff Laura Wesolowski for a report made by Plaintiff in October 2004, in violation of rights protected by the First Amendment. Amended Complaint (Dkt. No. 9). At that time, Plaintiff was a corrections officer at the Ulster County Jail, with the rank of Corporal. Id. at ¶¶ 7-8. In this position, part of his job responsibilities were to "investigate[] incidents, disturbances and complaints occurring during shift and report[] on same in writing, to superior." Plntf's Mem. in Opp. (Dkt. No. 20) at 3. The speech that allegedly prompted the retaliation was a report describing an inmate's alleged beating by a corrections officer, which was written by Plaintiff, pursuant to his job responsibilities. Id. at 2-3; Amended Complaint (Dkt. No. 9) at ¶ 9. When Plaintiff gave the report to his superior, Sergeant Winters ("Winters"), Winters told the Plaintiff to take it to Sergeant

---

[1] For printed publication by the Federal Reporters.

1

Knox, who then directed Plaintiff to give the report to Lieutenant Scott. Plntf's Mem. in Opp. (Dkt. No. 20) at 3. Subsequent to the incident, on December 30, 2004, Plaintiff was accused of leaving his post without relief, as well as insubordination, in the form of a verbal altercation with Sergeant Polacco. Amended Complaint (Dkt. No. 9) at ¶¶ 12-14; Deft's State. of Facts (Dkt. No. 18, Attach. 20) at ¶ 10-11. The charges were sustained and Plaintiff was suspended for 30 days without pay. Amended Complaint (Dkt. No. 9) at ¶ 16; Deft's State. of Facts (Dkt. No. 18, Attach. 20) at ¶¶ 13-14. Plaintiff asserts that all Defendants involved in the accusation, investigation and discipline related to these incidents were acting in retaliation against him for the report written by Plaintiff in October 2004. Amended Complaint (Dkt. No. 9) at ¶¶ 20-21.

In the Spring of 2005, Plaintiff's wife, Plaintiff Laura Wesolowski, applied for a position as Stock Clerk with the Sheriff's Department of Ulster County. Amended Complaint (Dkt. No. 9) at ¶¶ 26-30. Despite attaining a score of 95 of the relevant civil service exam and an interview she reports to have gone well, Plaintiff Laura Wesolowski was not hired for the position. Id. at ¶ 31. The person who was hired allegedly scored an 85 on the relevant civil service exam. Id. at ¶ 32. A few months later, there was a new opening for stock clerk, which Plaintiff Laura Wesolowski was again not hired to fill. Id. at 34-37. Plaintiff Laura Wesolowski alleges that she was not hired because Ulster County Sheriff J. Richard Bockelman refused to hire her in retaliation for Plaintiff's report of October 2004 and because of her intimate association with Plaintiff. Id. at ¶ 37.

Plaintiffs filed suit on this matter on March 14, 2005 (amended on August 30, 2005). See Docket. Also, Plaintiff grieved the discipline exacted against him under the Ulster County Correctional Officers' collective bargaining agreement. Sussman Affirm. (Dkt. No. 23) at ¶ 5. As of October 2006, the arbitration of this grievance was imminent. Id. Currently before the Court is

2

Defendants' Motion for Summary Judgment (Dkt. No. 18).

## II. Discussion

A.   Standard

A party moving for summary judgment is entitled to such relief if there is no genuine issue as to any material fact and the record as a whole could not lead a rational trier of fact to find for the non-moving party. Bickerstaff v. Vassar College, 196 F.3d 435, 444 (2d Cir. 1999); FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists, at which point the nonmovant must demonstrate that he can establish each element of his case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). "The nonmoving party must produce evidence in the record and 'may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible.'" Benvenisti v. City of New York, No. 04 Civ. 3166 (JGK), 2006 WL 2777274, at *1 (S.D.N.Y. Sept. 23, 2006) (quoting Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993)).

B.   Analysis

Defendant argues that Plaintiff's entire complaint must be dismissed because of the United States Supreme Court's recent holding in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), which ruled that the United States Constitution does not insulate public employees from employer discipline for statements made pursuant to their official duties. Mem. of Law in Support of MSJ (Dkt. No. 18, Attach. 20) at 3.

In Garcetti, the plaintiff was a deputy district attorney who determined that there were significant inaccuracies in an affidavit used to obtain a criminal search warrant. 126 U.S. at 1955. He relayed his concerns to his supervisors and prepared a disposition memorandum, recommending

3

that the case be dismissed, because of these inaccuracies. Id. at 1955-1956. When the prosecuting attorney decided to proceed with the case, the plaintiff testified for the defense about the problems with the affidavit. Id. at 1956. The plaintiff was then reassigned and denied a promotion, both of which he claims were retaliation for his speech. Id. In finding that the plaintiff's actions and speech were not protected by the first amendment, the United States Supreme Court specifically overruled the notion, relied upon by the Court of Appeals for the Ninth Circuit, that the content of the speech, as a matter of public concern, was more important that whether or not the speech was expressed pursuant to an employment responsibility. Id. at 1956-7. The plaintiff in Garcetti was investigating cases, supervising attorneys and writing memoranda as an employee, not as a citizen; accordingly, governmental action that restricts his behavior in such activities "simply reflects the exercise of employer control over what the employer itself has commissioned or created." Id. at 1960. The Court contrasted the speech at issue with that found to be protected in Pickering v. Bd. of Educ. of Tp. High School Dist. 205, 391 U.S. 563 (1968), in which the plaintiff teacher sent a letter to the local newspaper critical fo the Board of Education. Recent cases in the Northern District have applied the Garcetti rule that the crucial inquiry in determining whether the speech at issue is protected from retaliation is whether the speaker was speaking as a private citizen or as part of his official duties. Jackson v. Jimino, No. 1:03-CV-722, 2007 WL 1160409 (N.D.N.Y. Apr. 17, 2007) (Treese, M.J.) (slip); McLaughlin v. Pezzolla, No. 06-CV-00376, 2007 WL 676674, at *5 (N.D.N.Y. Feb. 28, 2007) (McAvoy, Senior D.J.) (slip)

     Plaintiff argues that the Garcetti rule is not applicable to this case because the speech at the root of this case was not pursuant to Plaintiff's official duties. Plaintiff admits that he wrote the report pursuant to his job responsibilities. Plntf's Mem. in Opp. (Dkt. No. 20) at 5. However, he

4

argues that in handing his report to a sergeant and a lieutenant in the chain of command, in addition to his direct superior, Sergeant Winters, his actions were beyond the limits of his job description and thus, private speech. Id. at 3-4.

Plaintiff's argument cannot succeed. The claim that a formal job description defines what actions are pursuant to employment duties was explicitly rejected by the Garcetti court, which noted that such a finding would suggest "that employers can restrict employees' rights by creating excessively broad job descriptions." 126 S. Ct at 1961-2 (noting also that "the listing of a given task in an employee's job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes"). Plaintiff's own description of the chain of events makes clear that he was acting at the direction of his superior when he reported the inmate complaint to the other officers. Plntf's Mem. in Opp. (Dkt. No. 20) at 5. Accordingly, the action he declares to be protected, reporting the inmate complaint, was clearly within his job responsibilities and "pursuant to his official duties," as required for the Garcetti rule to apply. See McGuire v. Warren, 490 F. Supp.2d 331, 340 (S.D.N.Y. 2007) (noting that expressions that "are part and parcel of the speaker's professional activities" are not protected by the First Amendment).

Because of this finding, this Court need not determine whether the discipline against Plaintiff was actually retaliation against him for his report. Because this speech is not protected under the first amendment, Plaintiff's employer is not prohibited by the first amendment from disciplining him because of the report. Garcetti, 126 S. Ct. at 1960 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."). If Plaintiff's allegations are true, they raise

5

significant concerns; it is disturbing that public officials would discipline an employee for honestly meeting his job expectations and reporting official abuse, pursuant to his job. However, the Supreme Court is clear that legal protection for the employee in this situation does not come from the First Amendment; other legal recourse may be possible, such as through the employee grievance process. See Garcetti, 126 S. Ct. at 1959 ("[u]nderlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'") (internal citations omitted).

Additionally, the claim of Plaintiff Laura Wesolowski that she was retaliated against for her husband's protected speech also must fail. Since it has been determined that the speech at issue, her husband's report of the inmate complaint, was not protected and there was no constitutional violation, no claims derived from that alleged violation can succeed. In Brewster v. City of Poughkeepsie, the plaintiff alleged that she was terminated in retaliation for a critical letter written by her husband. 434 F. Supp. 2d 155 (S.D.N.Y. 2006), The Brewster court rejected her claim, stating "if Officer Brewster does not have a cause of action based on his own unprotected speech- and he does not -his wife certainly cannot state a claim for retaliation based on that same unprotected speech." Id. at 157. For exactly the same reason, Laura Wesolowski's claim of retaliation based on her husband's speech fails.

Laura Wesolowski also asserts a claim for retaliation based on her intimate association with Plaintiff. She has put forward undisputed facts that establish that she was qualified for the stock clerk position. However, she has not pointed to any evidence of a nexus between Defendant Bockelman's decision not to hire her and her intimate association with Plaintiff. It is not a defendant's burden to "prove a negative when it moves for summary judgment on an issue that the

plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324). Plaintiff Laura Wesolowski has not presented "sufficient evidence... for a jury to return a verdict for [her]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Accordingly, her claim for retaliation based on intimate association must fail.

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 9) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall **CLOSE** Case No. 1:05-CV-0321(LEK/RFT); and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:     August 31, 2007
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge